IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANISLAUS CUSTODIAL DEPUTY SHERIFFS' ASSOCIATION,<br><br>Plaintiff,<br><br>vs.<br><br>DEPUTY SHERIFF'S ASSOCIATION OF STANISLAUS COUNTY, and VINCE BIZZINI,<br><br>Defendants. | CASE NO. CV F 09-1988 LJO SMS<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS** (Doc. 16) |

In this trade name infringement case, defendants Deputy Sheriff's Association of Stanislaus County and Vince Bizzini ("Defendants") move to dismiss the First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Plaintiff Stanislaus Custodial Deputy Sheriff's Association ("Plaintiff") filed an opposition on March 4, 2010. Pursuant to Local Rule 230(g), this matter is submitted on the pleadings without oral argument and before defendant's reply is due. Therefore, the hearing set for March 18, 2010 is VACATED. Having considered the moving and opposition papers, as well as the Court's file, the Court issues the following order.

## BACKGROUND

**A.  Plaintiff Stanislaus Custodial Deputy Sheriffs' Association**

Plaintiff originally incorporated in January 1984 under the name of the "Deputy Sheriff's Association of Stanislaus County" for the "purpose of providing representation for its members relating to employment and working conditions," among other things. (Doc. 14, FAC ¶¶6-7.) After incorporating, plaintiff began referring to itself as the "Stanislaus County Deputy Sheriffs' Association,"

1 by putting the county name first in its title. (Doc. 14, FAC ¶8.) Plaintiff has referred to itself as the "Stanislaus County Deputy Sheriffs' Association" for over twenty years. *Id.*

Plaintiff originally was comprised of the Deputy Sheriff Custodial bargaining unit and the Deputy Sheriff Coroner bargaining unit. The Coroner bargaining unit left plaintiff to form its own association. (Doc. 14, FAC ¶9.) Plaintiff continued to operate with the custodial bargaining unit and continued to refer to itself as the "Deputy Sheriff's Association of Stanislaus County" and also "Stanislaus County Deputy Sheriffs' Association." (Doc. 14, FAC ¶10.) Plaintiff alleges it is known in the Stanislaus County community, endorses political candidates, and is registered with the Political Action Committee. (Doc. 14, FAC ¶11, 15.)

In 2009, "[u]nbeknownst to Plaintiff, its corporate status had been suspended due to inadvertent failure to pay its corporate franchise tax." (Doc. 14, FAC ¶17.) Thereafter, due to plaintiff's revoked corporate status, plaintiff reincorporated but incorporated under the name "Stanislaus Custodial Deputy Sheriff's Association."[1] and its corporate status was revived under the new name on September 11, 2009. (Doc. 14, FAC ¶26.) Plaintiff then filed a fictitious business name statement under the fictitious name of "Stanislaus County Deputy Sheriffs' Association." (Doc. 14, FAC ¶27.)

**B.  Defendant Sheriff's Association of Stanislaus County**

Defendant Sheriff's Association of Stanislaus County is a non-profit organization headquartered in Sacramento, California. (Doc. 14, FAC ¶4.) Defendant Vince Bizzini is defendant's president. (Doc. 14, FAC ¶5.) Defendant filed articles of incorporation on June 25, 2009 as "Stanislaus Sworn Deputies Association" and filed a second articles of incorporation on July 13, 2009 as "Deputy Sheriff's Association of Stanislaus County," which apparently was during the time plaintiff corporation was in revoked status. (Doc. 14, FAC ¶17.) The Defendant's purpose to "to educate the public" on various matters. (Doc. 14, FAC ¶17.) After incorporating, defendant sent plaintiff a cease and desist letter demanding that "plaintiff cease and desist from using the name." In its cease and desist letter, defendant contended that plaintiff has no trademark rights to the name and defendant would continue to use the name. (Doc. 14, FAC ¶25.) Plaintiff responded with its own cease and desist letter for using "Stansilaus

---

[1] As explained *infra*, plaintiff incorporated under a different name than it had been using because defendant incorporated in the name "Sheriff's Association of Stanislaus County" while plaintiff was revoked status.

2

County Deputy Sheriff's Association" name. This action ensued.

**C. Claims in the First Amended Complaint**

Plaintiff alleges the following claims for relief:

1. First Claim for Relief for Misappropriation of Trade Name under the Lanham Act, 15 U.S.C. §1125(a).
2. Second Claim for Relief for Common Law Misappropriation of Trade Name.
3. Third Claim for Relief, Unfair Business Practice under Cal. Bus. & Pro. Code §17200.
4. Fourth Claim for Relief for Declaratory Relief.

## ANALYSIS AND DISCUSSION

**A. Rule 12(b)(6) - Motion to Dismiss for Failure to State a Claim**

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the pleadings set forth in the complaint. A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations of the complaint in question, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008); *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). A claim has facial plausibility,"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937 (2009). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). "While a complaint attacked

by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969. If a plaintiff fails to state a claim, a court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

**B.     Rule 12(b)(1) - Motion to Dismiss for Lack of Jurisdiction**

A party may challenge the court's jurisdiction over the subject matter of the complaint under Fed.R.Civ.P. 12(b)(1). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack jurisdiction either "facially" or "factually." *Thornhill Publishing Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)

Defendants contend plaintiff's complaint should be dismissed under F.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Fundamentally, federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 341 (1994). The presumption is that federal courts are "without jurisdiction unless the contrary affirmatively appears." *Fifty Associates v. Prudential Ins. Co. of America*, 446 F.2d 1187, 1190 (9th Cir. 1970). Limits on federal jurisdiction must neither be disregarded nor evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396 (1978).

A plaintiff bears the burden of establishing that subject matter jurisdiction is proper. *Kokkonen*, 511 U.S. at 377, 98 S.Ct. 2396. This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over an action. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780 (1936); F.R.Civ.P. 8(a)(1). When a defendant challenges jurisdiction "facially," all material allegations in the complaint

are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading. *Thornhill Publishing Co.,* 594 F.2d at 733; *Cervantez v. Sullivan*, 719 F.Supp. 899, 903 (E.D. Cal. 1989), *rev'd on other grounds*, 963 F.2d 229 (9th Cir. 1992).

**C.     Federal Question Jurisdiction under the Lanham Act**

Plaintiff alleges violation of the Lanham Act for defendant's confusing use of plaintiff's trade name. Defendant argues that, as a threshold matter, this Court does not have federal question jurisdiction over Plaintiff's FAC under the Lanham Act because plaintiff fails to adequately plead the claim.

**1.     Overview of the Lanham Act, 15 U.S.C. §1125**

Plaintiff's first cause of action is for violation of the Lanham Act, 15 U.S.C. §1125(a) which provides:

> "Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
>    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

Protection against the confusing use of commercial and corporate names is afforded upon the same principles as trademarks. *Accuride International, Inc. v. Accuride Crop.*, 871 F.2d 1531 (9th Cir. 1989) (trademark and corporate trade name protection are 'intertwined" and are governed by the same test of infringement and serve the same purposes.) Trademarks and trade names are technically distinct however. *Accuride*, 871 F.2d at 1534. Trade names symbolize the reputation of a business as a whole, while trademarks and service marks are designed to identify and distinguish a company's goods and services. *Accuride*, 871 F.2d at 1534. A trade name or commercial name is "any name used by a person to identify his or her business or vocation." Lanham Act §45, 15 U.S.C. §1127. The major legal distinction between trademarks and trade names is that trade names cannot be registered. *Accuride*, 871 F.2d at 1534.

5

Generally, federal district courts have original jurisdiction over all actions arising under the trademark statutes of Title 15 of the United States Code. 15 U.S.C. § 1121(a); 28 U.S.C. § 1338(a). To be liable for trademark infringement under § 1125(a), a person must (1) use in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services. 15 U.S.C. § 1125(a).

### 2. Use of Trademark in Interstate Commerce

Defendant argues that no federal question jurisdiction exists because plaintiff has not alleged and cannot establish "use in commerce." Defendants argue that there are no allegations that any of the alleged acts occurred in interstate commerce, because neither defendant nor plaintiff has used the name in interstate commerce.

To present a justiciable claim under section 1125(a) of the Lanham Act, plaintiff must show a connection to interstate commerce. Lanham Act jurisdiction only attaches to uses of a trademark in interstate commerce, or "intrastate commerce which 'affects' interstate commerce." *Thompson Tank & Mfg. Co. v. Thompson*, 693 F.2d 991, 992-93 (9th Cir.1982). In *Thompson*, plaintiff Thompson sued defendant Thompson for using an infringing surname. Defendant Thompson was a local contractor who constructed storage tanks. Plaintiff was a tank manufacturer. After a bench trial, the Court held that it did not have subject matter jurisdiction to resolve the dispute over surnames, and the Ninth Circuit affirmed. No jurisdiction existed because the defendant's conduct did not "affect" interstate commerce in which the plaintiff was engaged. No evidence showed that defendant's intrastate work of local manufacturing storage tanks affected plaintiff's interstate business of tank manufacturing. Thus, the defendant's activities did not "affect" interstate commerce in which the plaintiff was engaged. *Id.* at 993.

Here, plaintiff alleges that it uses its name in interstate commerce. Plaintiff alleges it maintains a public website found at http://www.stancodsa.com. Plaintiff alleges that it has maintained this website "for several years" and that through the website, visitors may learn about plaintiff by clicking the "About Us" link. (Doc. 14, FAC ¶12.) The website refers to plaintiff by the name "Stanislaus County Deputy Sheriffs' Association" or by the initials "SCDSA."

A website, transmitted worldwide over the Internet, falls within the scope of commerce lawfully regulated by Congress because the Internet has been deemed an "instrumentality and channel of interstate commerce." *U.S. v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("[a]s both the means to engage in commerce and the method by which transactions occur, 'the Internet is an instrumentality and channel of interstate commerce.' ") Thus, these allegations are sufficient to allege that plaintiff engages in interstate commerce.

However, under *Thompson,* plaintiff must allege that the alleged infringement affected interstate commerce. Plaintiff must allege how the defendant's conduct "affects" interstate commerce in which the plaintiff was engaged. The allegations must state facts that upon which it is plausible that defendant's conduct infringed upon plaintiff's interstate commerce. The FAC fails to set forth such factual support.

### 3. Use of Trademark in a Commercial or Competitive Context

Further, to invoke the protections of the Lanham Act, a plaintiff must show that the alleged infringer used the plaintiff's mark "in connection with any goods or services." 15 U.S.C. § 1125(a)(1). Infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers. In *Bosley Med. Inst., Inc. v. Kremer*, the Ninth Circuit, interpreting the language of §1125(a), held that trademark infringement claims under the Lanham Act "are subject to a commercial use requirement." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005). In *Bosley,* the Ninth Circuit was confronted with the issue of whether "the noncommercial use of a trademark as a domain name of a website ... constitute[s] infringement under the Lanham Act." *Id.* at 674. The defendant Kremer was dissatisfied with a hair implant procedure he had received from Bosley Medical and created a website with the domain name "bosleymedical.com" to post negative information about Bosley Medical. The Ninth Circuit affirmed the district court's ruling that the defendant's use was not "in connection with the sale of goods or services." The Court stated that "the question boils down to" whether the use of the name was "in connection with a sale of good or services," and if it was not, then the use was "noncommercial" and did not violate the Lanham Act. The term "commerce" means whether the defendant's use was "in connection with a sale of goods or services." *Bosley*, 403 F.3d at 677. The Court ultimately held that:

> The dangers that the Lanham Act was designed to address are simply not at issue in this case. The Lanham Act, expressly enacted to be applied in commercial contexts, does not prohibit all unauthorized uses of a trademark. [The defendant's] use of the [plaintiff's trademark] simply cannot mislead consumers into buying a competing product ....

*Id.* at 679-80. "The Lanham Act seeks to prevent consumer confusion that enables a seller to pass off his goods as the goods of another.... [T]rademark infringement protects only against mistaken purchasing decisions and not against confusion generally." *Bosley*, 403 F.3d at 679. The court found no infringement because the use of the name in "Bosley medical" was "noncommercial."

In a District Court decision relying upon *Bosley*, the court held that the term "commercial" was further meant "profit motive" infringement. In *Hancock Park Homeowners Association Est. 1948 v. Hancock Park Home Owners Association*, 2006 WL 4532986 (C.D. Cal. 2007), the court held it lacked jurisdiction over a non-commercial use of an infringing name and granted a motion to dismiss. In strikingly similar facts as those presently before this Court, *Hancock Park Homeowners* involved a plaintiff nonprofit corporation organized for 60 years which had long used the trade name and service mark of "Hancock Park Home Owners Association." A clerical error led to the suspension of its corporate status by the Franchise Tax Board. Defendant acted upon plaintiff's revoked status and formed a California corporation under the exact same name. After suit was filed under the Lanham Act, defendant moved to dismiss for lack of subject matter jurisdiction. The Court granted the motion because the parties' use of the trademark was not a commercial use, or a use that "impact[ed] some type of purchasing decision," or a use that was consistent with "a motive for profit." Relying on *Bosley Med. v. Kremer,* the court stated, "Neither Plaintiff's nor Defendant's actions involve commercial transactions in any sense, nor are they acting with a motive for profit. Plaintiff's services cannot be considered 'commercial' merely because they are funded by freely given donations." Thus, the Court dismissed the complaint for lack of jurisdiction because plaintiff and defendant did not engage in a "commercial use" of the trademark.[2]

---

[2] *But see Browne v. McCain,* 612 F. Supp. 2d 1125 (C.D. Cal. 2009), where the court denied defendants' motion to dismiss for failure to state a claim, and ruled that Lanham Act applied to non-commercial speech or political speech; See contemporaneously issued opinion, *Browne v. McCain*, 611 F. Supp. 2d 1073 (C.D. Cal. 2009). *Browne v. McCain*, however, did not address or cite the Ninth Circuit decisions in *Thompson Tank & Mfg. Co. v. Thompson*, 693 F.2d 991, 992-93 (9th Cir.1982) or *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir.2005). For this reason, this Court does not find

8

Plaintiff argues that the Lanham Act protects "noncommercial activity." Plaintiff relies upon *Bosley* and also the Second Circuit's decision in *United WE Stand America* for the proposition that non-commercial activity in protected. The Second Circuit held in *United We Stand America, Inc. v. United We Stand, America New York, Inc.*, 128 F.3d 86, 90 (2d Cir.1997), *cert. denied*, 523 U.S. 1076 (1998), that the "use in connection with the sale of goods and services" requirement of the Lanham Act does not require any actual sale of goods and services. *United WE Stand America* held that a political organization renders "services" worthy of protection under the Lanham Act. The Ninth Circuit, in *Bosley Medical Institute, Inc. v. Kremer*, cited *United WE Stand America* with approval, and stated that "the appropriate inquiry is whether [defendant] offers competing services to the public." *Bosley*, 403 F.3d at 679. Thus, *United WE Stand America*, at best for plaintiff, stands for the proposition that if an actual sale of goods is not involved, the infringer must be engaged in some form of commercial competition.[3]

Pursuant to *Thompson* and *Bosley*, defendant's use of plaintiff's name must both "affect" interstate commerce and also be used in a commercial or competitive context. Here, the First Amended Complaint does not set forth allegations of the commercial use of the trade name. Nor does the FAC allege that defendant used the name to try to secure any kind of commercial benefit or competitive advantage. Plaintiff fails to allege that Defendants are operating any type of businesses or conducting or offering any services or otherwise using Plaintiff's trade name in connection with any goods or services. Plaintiff must allege that some goods, services or other form of competition with the infringing organization. The FAC must allege that use of plaintiff's trademark in a commercial or competitive context.[4]

Plaintiff alleges that defendant filed articles of incorporation with the same name that had been

---

*Browne v. McCain* persuasive.

[3] Arguably, *United WE Stand America* is entirely distinguishable because at issue was a violation of 15 U.S.C. 1114(a) which protects registered trade names. Section 1114(a) of the Lanham Act does not have a requirement for any commercial activity, unlike section 1125(a) of the Lanham Act which is at issue in this motion. Section 1125(a) requires use "in connection with any goods or services." The Ninth Circuit in *Bosley* nonetheless relied upon *United WE Stand America* and did not note the statutory difference.

[4] It is unnecessary for the court to resolve whether a "profit motive" is required to be alleged, as stated in *Hancock Park Homeowners*, because the Court finds that plaintiff has failed to adequately plead any "connection with goods and services."

used by plaintiff. (Doc. 14, FAC ¶17.) Plaintiff's allegations focus on the name "confusion" in the marketplace. "Confusion" is but one element of the claim for trademark infringement. Absent a commercial use of plaintiff's name, consumer confusion is unlikely. The Court declines to reach the "confusion" element because plaintiff's allegations do not show that the Court has jurisdiction under the Lanham Act. The allegations do not show infringement affected interstate commerce and that the plaintiff's name was used in a commercial or competitive context.

Plaintiff also relies upon out of Circuit district court cases for the proposition that non-profit names are protected. *See, e.g., Kappa Sigma Fraternity v. Kappa Sigma Gamma Fraternity*, 654 F. Supp. 1095 (D.N.H 1987) and *Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.,* 662 F.Supp.203 (S.D.N.Y 1987); also citing McCarthy, *McCarthy on Trademarks and Unfair Competition* §§9.5-9:7.5 (4th ed. 2009).

Name protection may extend to non-profit organization, but plaintiff, nonetheless, must allege facts which conform to the requirements to state a claim for relief. *See U.S. Jaycees v. San Francisco Jr. Chamber of Commerce*, 354 F. Supp. 61 (N.D. Cal. 1972), *judgment aff'd*, 513 F.2d 1226 (9th Cir. 1975) (restraining competing use of the "Jaycees" name by disenfranchised Jaycees chapter). Accordingly, the motion to dismiss will be granted with leave to amend.

**D.     Third Party Liability for Infringement**

Defendant Bizzini argues that he cannot be individually liable under the Lanham Act. He argues that the FAC alleges that he was acting on behalf of his corporation and does not show that he, individually, violated the law or injured the plaintiff. (Doc. 16, Defendants P&A p. 20.)

The FAC alleges that Defendant Bizzini is the President of defendant Deputy Sheriff's Association of Stanislaus County. (Doc. 14, FAC ¶5.) Plaintiff alleges that Defendant Bizzini sent plaintiff's president a cease and desist letter and asserted that Defendant Bizzini's organization has the exclusive right to the name. (Doc. 14, FAC ¶21, 32.) The other conduct alleged against Bizzini is that he "told Juan Alanis to take off a shirt bearing the Stanislaus County Deputy Sheriffs' Association logo," and saying defendant had the exclusive right to the name. (Doc. 14, FAC ¶32.)

Here, the allegations as to the wrongful conduct of defendant Bizzini are factually insufficient. The allegations fail to identify the conduct of the defendant for which plaintiff seeks to hold him liable.

The allegations do not identify what defendant Bizzini did which was wrongful conduct. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948-49 ("Plaintiff's amended complaint should be brief, Fed.R.Civ.P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights"). California recognizes the separateness of a corporation's conduct from that of its officers. Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done. *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal.3d 586, 595, 463 P.2d 770, 775, 83 Cal.Rptr. 418, 423 (1970). Plaintiffs must allege more factually explicit wrongful conduct as to defendant Bizzini. Accordingly, the motion will be granted with leave to amend consistent with this order.

**E.     Remaining Claims**

Defendants seek to dismiss the state law claims and the declaratory relief claim because the Court lacks federal jurisdiction. The Court has found that the FAC is factually insufficient under *Iqbal* to state a claim for relief under the Lanham Act.

Plaintiff has not requested leave to amend. Nonetheless, leave to amend is freely given under the Rule 15. Pursuant to Fed. R. Civ. P. 15, this Court "should freely give leave when just so requires." Plaintiff may be able to set forth sufficient facts to state a claim for relief under the Lanham Act. Thus, plaintiff should have an opportunity to conform federal pleading standards. Therefore, the Court does not reach the state law claims. Accordingly, the motion to dismiss will be granted with leave to amend.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is GRANTED with leave to amend. Plaintiff shall have twenty days (20) days from the date of service of the order to file an amended complaint in conformance with this order.

IT IS SO ORDERED.

**Dated:     March 9, 2010**                    /s/ Lawrence J. O'Neill
                                                                    UNITED STATES DISTRICT JUDGE