1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9   STANISLAUS CUSTODIAL DEPUTY               CASE NO. CV F 09-1988 LJO SMS
    SHERIFFS' ASSOCIATION,
10                                            **ORDER ON DEFENDANTS' MOTION TO**
                        Plaintiff,            **DISMISS SECOND AMENDED**
11                                            **COMPLAINT**
            vs.
12
    DEPUTY SHERIFF'S ASSOCIATION OF
13  STANISLAUS COUNTY, and VINCE
    BIZZINI,
14
                        Defendants.
15  _____/

16          In this trade name infringement case, defendants Deputy Sheriff's Association of Stanislaus

17  County and Vince Bizzini ("Defendants" or "defendant DSA") move to dismiss the Second Amended

18  Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).  Plaintiff Stanislaus Custodial Deputy

19  Sheriff's Association ("Plaintiff" or "SCDSA") filed an opposition on May 20, 2010.  Defendants filed

20  a reply on May 27, 2010.  Pursuant to Local Rule 230(g), this matter is submitted on the pleadings

21  without oral argument.  Therefore, the hearing set for June 3, 2010 is VACATED.  Having considered

22  the moving and opposition papers, as well as the Court's file, the Court issues the following order.

23                              **BACKGROUND**

24  **A.      Plaintiff Stanislaus Custodial Deputy Sheriffs' Association**

25          Plaintiff originally incorporated in January 1984 under the name of the "Deputy Sheriff's

26  Association of Stanislaus County" for the "purpose of providing representation for its members relating

27  to employment and working conditions," among other things. (Doc. 23, SAC ¶¶6-7.)    After

28  incorporating, plaintiff began referring to itself as the "Stanislaus County Deputy Sheriffs' Association,"

                                        1

1   by putting the county name first in its title.  (Doc. 23, SAC ¶8.)  Plaintiff has referred to itself as the

2   "Stanislaus County Deputy Sheriffs' Association" for over twenty years.  *Id.*  Plaintiff alleges that its

3   name is highly visible in the community and is associated with public service events.  *Id.*

4           Plaintiff alleges it uses its name in interstate commerce through its website.  The website refers

5   to plaintiff as the "SCDSA" and states the purpose of the organization.  (Doc. 23, SAC ¶10.)  Plaintiff

6   also attends out of state peace officer training and conferences.  (Doc. 23, SAC ¶11.)  At the conferences,

7   plaintiff displays its name on t-shirts and on banners.  (Doc. 23, SAC ¶12.)  It also uses its trade name

8   in connection with its Political Action Committee, which apparently is a separate entity, and is registered

9   with the State of California.  (Doc. 23, SAC ¶13.)

10          Plaintiff alleges that defendant disaffiliated from plaintiff and formed a competing bargaining

11  unit. (Doc.23, SAC ¶14.) Plaintiff alleges that plaintiff and defendant now provide competing charitable

12  and civic services.  (Doc. 23, SAC ¶14.)  Plaintiff alleges that it provides professional standards for

13  peace officer, supports widows and orphans of fallen officers, and provides education and informational

14  activities regarding law enforcement legislation.  (Doc. 23, SAC ¶14.)  Plaintiff alleges its name has

15  good will associated with it in the public mind.

16          Plaintiff alleges defendant competes with plaintiff in negotiating contracts with the County on

17  behalf of their respective members.  (Doc. 23, SAC ¶15.)

18          In 2009, "[u]nbeknownst to Plaintiff, its corporate status had been suspended due to inadvertent

19  failure to pay its corporate franchise tax."  (Doc. 23, SAC ¶18.)  Thereafter, due to plaintiff's revoked

20  corporate status, plaintiff reincorporated but incorporated under the name "Stanislaus Custodial Deputy

21  Sheriff's Association."[1] and its corporate status was revived under the new name on September 11, 2009.

22  (Doc. 23, SAC ¶27.)  Plaintiff then filed a fictitious business name statement under the fictitious name

23  of "Stanislaus County Deputy Sheriffs' Association."  (Doc. 23, SAC ¶28.)

24  **B.      Defendant Sheriff's Association of Stanislaus County**

25          Defendant Sheriff's Association of Stanislaus County is a non-profit organization headquartered

26  in Sacramento, California.  (Doc. 23, SAC ¶4.)  Defendant Vince Bizzini is defendant's president.  (Doc.

27  _____

28          [1] As explained *infra*, plaintiff incorporated under a different name than it had been using because defendant incorporated in the name "Sheriff's Association of Stanislaus County" while plaintiff was revoked status.

2

1   23, SAC ¶5.)  Defendant filed articles of incorporation on June 25, 2009 as "Stanislaus Sworn Deputies

2   Association" and filed a second articles of incorporation on July 13, 2009 as "Deputy Sheriff's

3   Association of Stanislaus County," which apparently was during the time plaintiff corporation was in

4   revoked status.  (Doc. 23, SAC ¶17.)  The Defendant's purpose to "to educate the public" on various

5   matters.  (Doc. 23, SAC ¶19.)  After incorporating, defendant sent plaintiff a cease and desist letter

6   demanding that "plaintiff cease and desist from using the name."  In its cease and desist letter, defendant

7   contended that plaintiff has no trademark rights to the name and defendant would continue to use the

8   name.  (Doc. 23, SAC ¶21-22.)  Plaintiff responded with its own cease and desist letter for using

9   "Stansilaus County Deputy Sheriff's Association" name.  This action ensued.

10  **C.      Claims in the Second Amended Complaint**

11          Plaintiff alleges the following claims for relief:

12          1.      First Claim for Relief for Misappropriation of Trade Name under the Lanham Act, 15

13                  U.S.C. §1125(a).

14          2.      Second Claim for Relief for Common Law Misappropriation of Trade Name.

15          3.      Third Claim for Relief, Unfair Business Practice under Cal. Bus. & Pro. Code §17200.

16          4.      Fourth Claim for Relief for Declaratory Relief.

17                          **ANALYSIS AND DISCUSSION**

18  **A.      Rule 12(b)(6) - Motion to Dismiss for Failure to State a Claim**

19          A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the

20  pleadings set forth in the complaint.  A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either

21  a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

22  theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In considering a motion

23  to dismiss for failure to state a claim, the court generally accepts as true the allegations of the complaint

24  in question, construes the pleading in the light most favorable to the party opposing the motion, and

25  resolves all doubts in the pleader's favor.  *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir.

26  2008); *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

27          To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief

28  that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).

1   A claim has facial plausibility,"when the plaintiff pleads factual content that allows the court to draw

2   the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, – U.S.

3   –, 129 S.Ct. 1937 (2009).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual

4   content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling

5   the plaintiff to relief."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

6           A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences

7   and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v.*

8   *American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted).  "While a complaint attacked

9   by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation

10  to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

11  formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 554,127 S. Ct.

12  1955, 1964-65 (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when

13  construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a

14  cause of action."  *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In

15  practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material

16  elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127

17  S.Ct. at 1969.  If a plaintiff fails to state a claim, a court need not permit an attempt to amend a

18  complaint if "it determines that the pleading could not possibly be cured by allegation of other facts."

19  *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

20  **B.      Rule 12(b)(1) - Motion to Dismiss for Lack of Jurisdiction**

21          A party may challenge the court's jurisdiction over the subject matter of the complaint under

22  Fed.R.Civ.P. 12(b)(1).  A complaint will be dismissed if, looking at the complaint as a whole, it appears

23  to lack jurisdiction either "facially" or "factually."  *Thornhill Publishing Co. v. General Tel. & Elec.*

24  *Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)

25          Defendants contend plaintiff's complaint should be dismissed under F.R.Civ.P. 12(b)(1) for lack

26  of subject matter jurisdiction.   Fundamentally, federal courts are courts of limited jurisdiction.

27  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 341 (1994).  The presumption is that

28  federal courts are "without jurisdiction unless the contrary affirmatively appears." *Fifty Associates v.*

4

*Prudential Ins. Co. of America*, 446 F.2d 1187, 1190 (9th Cir. 1970).  Limits on federal jurisdiction must neither be disregarded nor evaded.  *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396 (1978).

A plaintiff bears the burden of establishing that subject matter jurisdiction is proper.  *Kokkonen*, 511 U.S. at 377, 98 S.Ct. 2396.  This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over an action. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780 (1936); F.R.Civ.P. 8(a)(1).  When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading.  *Thornhill Publishing Co.,* 594 F.2d at 733; *Cervantez v. Sullivan*, 719 F.Supp. 899, 903 (E.D. Cal. 1989), *rev'd on other grounds*, 963 F.2d 229 (9th Cir. 1992).

## C.   Federal Question Jurisdiction under the Lanham Act

The first cause of action is for violation of the Lanham Act.  Plaintiff alleges violation of the Lanham Act for defendant's confusing use of plaintiff's trade name. Defendant argues that, as a threshold matter, this Court does not have federal question jurisdiction over plaintiff's SAC because plaintiff fails to adequately plead the claim.  Defendant argues that plaintiff does not satisfy the Lanham Act because plaintiff does not allege defendant has used the name in interstate commerce and does not allege that plaintiff uses the name for commercial purposes.

### 1.   Overview of the Lanham Act, 15 U.S.C. §1125

Plaintiff's first cause of action is for violation of the Lanham Act, 15 U.S.C. §1125(a) which provides:

> "Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

Protection against the confusing use of commercial and corporate names is afforded upon the same principles as trademarks. *Accuride International, Inc. v. Accuride Crop.*, 871 F.2d 1531 (9th Cir. 1989) (trademark and corporate trade name protection are 'intertwined" and are governed by the same test of infringement and serve the same purposes.)  Trademarks and trade names are technically distinct however. *Accuride*, 871 F.2d at 1534. Trade names symbolize the reputation of a business as a whole, while trademarks and service marks are designed to identify and distinguish a company's goods and services. *Accuride*, 871 F.2d at 1534.  A trade name or commercial name is "any name used by a person to identify his or her business or vocation."  Lanham Act §45, 15 U.S.C. §1127.  The major legal distinction between trademarks and trade names is that trade names cannot be registered. *Accuride*, 871 F.2d at 1534.

Generally, federal district courts have original jurisdiction over all actions arising under the trademark statutes of Title 15 of the United States Code. 15 U.S.C. § 1121(a); 28 U.S.C. § 1338(a). To be liable for trademark infringement under § 1125(a), a person must (1) use in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services. 15 U.S.C. § 1125(a).

### 2.    Use of Trademark in Interstate Commerce

Defendant argues that no federal question jurisdiction exists because plaintiff has not alleged and cannot establish interstate commerce.  Defendants argue that there are no allegations that any of the alleged acts occurred in interstate commerce, because neither defendant nor plaintiff has used the name in interstate commerce. (Doc. 27, Defendants' P&A p.12.)  Further, defendants argue that plaintiff does not allege that defendants interfered with plaintiff's interstate commerce activities.   (Doc. 27, Defendants' P&A p.12.)

To present a justiciable claim under section 1125(a) of the Lanham Act, plaintiff must show a connection to interstate commerce.  Lanham Act jurisdiction only attaches to uses of a trademark in interstate commerce, or "intrastate commerce which 'affects' interstate commerce." *Thompson Tank & Mfg. Co. v. Thompson*, 693 F.2d 991, 992-93 (9th Cir.1982).  In *Thompson*, plaintiff Thompson sued defendant Thompson for using an infringing surname. Defendant Thompson was a local contractor who

6

constructed storage tanks.  Plaintiff was a tank manufacturer.  After a bench trial, the Court held that it did not have subject matter jurisdiction to resolve the dispute over surnames, and the Ninth Circuit affirmed.  No jurisdiction existed because the defendant's conduct did not "affect" interstate commerce in which the plaintiff was engaged.  No evidence showed that defendant's intrastate work of local manufacturing storage tanks affected plaintiff's interstate business of tank manufacturing.  Thus, the defendant's activities did not "affect" interstate commerce in which the plaintiff was engaged.  *Id.* at 993.

Here, plaintiff alleges that it uses its name in interstate commerce.  Plaintiff alleges it maintains a public website found at http://www.stancodsa.com.  Plaintiff alleges that it has maintained this website "for several years" and that through the website, visitors may learn about plaintiff by clicking the "About Us" link.  (Doc. 23, SAC ¶10.)  The website refers to plaintiff by the name "Stanislaus County Deputy Sheriffs' Association" or by the initials "SCDSA."  Defendant argues that plaintiff did not use the name in interstate commerce and only engaged in the following out-of-state activities: (1) maintaining a publicly accessible website bearing the SCDSA name; (2) attending out-of-state training and conferences, where it "prominently displays its name." (Doc. 23, SAC, ¶¶ 10, 11.)  Defendant argues that "the mere fact that a mark appears in interstate commerce is not enough to invoke Lanham Act jurisdiction."  (Doc. 27, Defendants' P&A p.13.)

A website, transmitted worldwide over the Internet, falls within the scope of commerce lawfully regulated by Congress because the Internet has been deemed an "instrumentality and channel of interstate commerce."  *U.S. v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("[a]s both the means to engage in commerce and the method by which transactions occur, 'the Internet is an instrumentality and channel of interstate commerce.'")

Defendant argues that mere use of the internet does not create federal jurisdiction, citing *Ange v. Templer*, 418 F.Supp. 2d 1169 (N.D. Cal. 2006).  In *Ange v. Templer*, the District Court granted remand to state court because plaintiff did not allege federal Lanham Act claims and the state law did not implicate significant federal issues. The case involved a dispute over an internet domain name between a television production company and a consulting firm with the same domain name.  The Court stated, in passing that "defendant's arguments suffer from an attempt to translate every issue relating to

1    the Internet into a federal question. The Internet is not a talisman bestowing federal jurisdiction." *Ange*,

2    418 F. Supp.2d at 1173.

3            Here, unlike in *Ange v. Templer*, plaintiff directly alleges a federal Lanham Act claim and alleges

4    it uses its name in interstate commerce via its website.  Unlike *Ange v. Templer*, plaintiff alleges that

5    defendants claim the right to the name and persons are confused by the similarity of the names.  (Doc.

6    23, SAC ¶¶29, 36.)  For purposes of this motion, these allegations sufficiently allege facts plausible to

7    support use of its name in interstate commerce.  Thus, these allegations are sufficient to allege that

8    plaintiff engages in interstate commerce.

9            Defendant argues that even if plaintiff used the name by maintaining a publicly accessible

10   website, plaintiff has not alleged the defendants actions interfered with the website.  (Doc. 27,

11   Defendant's P&A p. 13.)  Defendant argue that plaintiff has not alleged that defendants' "use" of the

12   name substantially affected plaintiff's efforts to display the name in interstate commerce.

13          Plaintiff must allege that the alleged infringement affected interstate commerce.  *Thompson*, 693

14   F.2d at 993.  Plaintiff must allege how the defendant's conduct "affects" interstate commerce in which

15   the plaintiff was engaged.

16          Plaintiff argues that it has alleged that defendant continues to inform third parties that defendant

17   has the exclusive right to the use of Plaintiff's alleged trade name.  Here, plaintiff alleges that defendants

18   have interfered with plaintiff's use of its name:

19                  "Defendants . . . have continued to advise third parties that defendants
                    have the exclusive right to use plaintiff's trade name.  Plaintiff
20                  is informed and believes that Defendants have repeatedly asserted this
                    exclusive right to Plaintiff's trade name, both on their own website, and
21                  by posting comments on online newspaper articles and blogs . .  In these
                    comments, defendants assert a blanket right to use the name Stanislaus
22                  County Deputy Sheriffs' Association in providing the same services that
                    Plaintiff provides."  (Doc. 23, SAC ¶29.)
23

24   The allegations state facts that upon which it is plausible that defendant's conduct infringed upon

25   plaintiff's interstate commerce.   The allegations set forth that defendants are using the alleged trade

26   name and informing others that defendants own the exclusive right to the name.  Defendant DSA claims

27   plaintiff's trade name as its own. Plaintiff claims it exclusively has the right to the name. Some of the

28   actions are via the internet, some are locally and some are in the out of state conferences.   These

                                                        8

allegations are sufficient to support a plausible claim that defendants infringed upon the trade name in interstate commerce.

### 3.    Use of Trademark in a Commercial or Competitive Context

Further, to invoke the protections of the Lanham Act, a plaintiff must show that the alleged infringer used the plaintiff's mark "in connection with any goods or services." 15 U.S.C. § 1125(a)(1). Generally, infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers.  In *Bosley Med. Inst., Inc. v. Kremer*, the Ninth Circuit, interpreting the language of §1125(a), held that trademark infringement claims under the Lanham Act "are subject to a commercial use requirement." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005).  In *Bosley,* the Ninth Circuit was confronted with the issue of whether "the noncommercial use of a trademark as a domain name of a website ... constitute[s] infringement under the Lanham Act." *Id.* at 674.  The defendant Kremer was dissatisfied with a hair implant procedure he had received from Bosley Medical and created a website with the domain name "bosleymedical.com" to post negative information about Bosley Medical.  The Ninth Circuit affirmed the district court's ruling that the defendant's use was not "in connection with the sale of goods or services."  The Court stated that "the question boils down to" whether the use of the name was "in connection with a sale of good or services," and if it was not, then the use was "noncommercial" and did not violate the Lanham Act.  The term "commerce" means whether the defendant's use was "in connection with a sale of goods or services." *Bosley*, 403 F.3d at 677.  The Court ultimately held that:

> The dangers that the Lanham Act was designed to address are simply not at issue in this case. The Lanham Act, expressly enacted to be applied in commercial contexts, does not prohibit all unauthorized uses of a trademark. [The defendant's] use of the [plaintiff's trademark] simply cannot mislead consumers into buying a competing product ....

*Id.* at 679-80.  "The Lanham Act seeks to prevent consumer confusion that enables a seller to pass off his goods as the goods of another.... [T]rademark infringement protects only against mistaken purchasing decisions and not against confusion generally." *Bosley*, 403 F.3d at 679.  The court found no infringement because the use of the name in "Bosley medical" was "noncommercial."

In a District Court decision relying upon *Bosley*, the court held that the term "commercial" further meant "profit motive" infringement.  In *Hancock Park Homeowners Association Est. 1948 v.*

9

*Hancock Park Home Owners Association*, 2006 WL 4532986 (C.D. Cal. 2006), the court held it lacked jurisdiction over a non-commercial use of an infringing name and granted a motion to dismiss.  In strikingly similar facts as those presently before this Court, *Hancock Park Homeowners* involved a plaintiff nonprofit corporation organized for 60 years which had long used the trade name and service mark of "Hancock Park Home Owners Association."  A clerical error led to the suspension of its corporate status by the Franchise Tax Board.  Defendant acted upon plaintiff's revoked status and formed a California corporation under the exact same name. After suit was filed under the Lanham Act, defendant moved to dismiss for lack of subject matter jurisdiction.  The Court granted the motion because the parties' use of the trademark was not a commercial use, or a use that "impact[ed] some type of purchasing decision," or a use that was consistent with "a motive for profit." Relying on *Bosley Med. v. Kremer,* the court stated, "Neither Plaintiff's nor Defendant's actions involve commercial transactions in any sense, nor are they acting with a motive for profit. Plaintiff's services cannot be considered 'commercial' merely because they are funded by freely given donations." Thus, the court dismissed the complaint for lack of jurisdiction because plaintiff and defendant did not engage in a "commercial use" of the trademark.

In *Freecycle Network, Inc. v. Oey,* 505 F.3d 898, 903 (9th Cir. 2007), the Court stated that a threshold matter is showing a competing service for a commercial benefit. In *Freecycle*, plaintiff was a nonprofit corporation and through its Web site, offered a service whereby people could exchange recyclable goods.  Defendant published comments that the name "Freecycle" was not a trademarkable term.  The Court found that this mere publication was not a "commercial use" of the name:  "Oey's actions likely did not constitute a "use in commerce," 15 U.S.C. § 1125(a)(1), as the record in this case does not indicate that they were made to promote any competing service or reap any commercial benefit whatsoever . . ." Rather, the use was one in which defendant merely expressed an opinion upon whether "Freecyle" was protectable.  The publication did not mention any competing service or product, and therefore plaintiff did not demonstrate trademark infringement.

Plaintiff argues that the Lanham Act protects "noncommercial activity" in a "competitive" context.  Plaintiff relies upon *Bosley* and also the Second Circuit's decision in *United WE Stand America* for the proposition that non-commercial activity in protected as long it is in some form of "competition."

1    Plaintiff also relies upon out of Circuit district court cases for the proposition that non-profit names are

2    protected.  *See, e.g., Kappa Sigma Fraternity v. Kappa Sigma Gamma Fraternity*, 654 F. Supp. 1095

3    (D.N.H 1987) and *Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.,* 662 F.Supp.203 (S.D.N.Y

4    1987); also citing McCarthy, *McCarthy on Trademarks and Unfair Competition* §§9.5-9:7.5 (4th ed.

5    2009).

6          **4.       The Lanham Act Supports a Claim for Infringement in a "Competitive" Context**

7          After reviewing these and other authorities, the Court agrees "competitive" use of a purported

8    trade name satisfies the "commercial use" requirement of the Lanham Act.  In general, trademark

9    infringement grew out of the common law generic concept of protecting against "unfair competition."

10   *International Order of Job's Daughters v. Lindeburg and Co.*, 633 F.2d 912, 915 (9th Cir. 1980), *cert.*

11   *denied*, 452 U.S. 941, 101 S. Ct. 3086 (1981).  The Lanham Act created a federal protection against two

12   types of unfair competition, infringement of registered trademarks, 15 U.S.C. § 1114, and the related tort

13   of false designation of the origin of goods, 15 U.S.C. § 1125(a).  *International Order of Job's Daughters*,

14   633 F.2d 915.  For unregistered marks, like the one at issue in this case, the Lanham Act requires that

15   the accused use be "on or in connection with any goods or services" and be likely to cause confusion,

16   mistake or deception as to the affiliation, connection or association of the accused person with the

17   plaintiff or as to the origin of the "goods, services or commercial activities" of the accused person. 15

18   U.S.C.A. § 1125(a)(1)(A). The Lanham Act was intended to make "actionable the deceptive and

19   misleading use of marks" and "to protect persons engaged in ... commerce against unfair competition."

20   15 U.S.C. § 1127.  For unregistered marks, the Lanham Act "prohibits a broader range of practices than

21   does § 32," which applies to a registered mark.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763,

22   767-768, 112 S.Ct. 2753, 2757 (1992).  The Lanham Act serves "to secure to the owner of the mark the

23   goodwill of his business and to protect the ability of consumers to distinguish among competing

24   producers." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. at 774.   A requirement that the "unfair

25   competition" be connected to a "profit motive" is absent from the terms of Lanham Act and authoritative

26   cases interpreting the Act.  Thus, the originations of the Lanham Act in protecting against unfair

27   competition are consistent with protecting competition.

28          To find that trademark is not protected unless a "profit motive" is present would be inconsistent

11

1 with the numerous cases holding that non-profit names are protected.  For instance, protection is

2 extended to the name of non-profit professional and fraternal groups. *See generally, International Order*

3 *of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912 (9th Cir. 1980), *cert. denied*, 452 U.S. 941, 101

4 S. Ct. 3086 (1981).  Name protection may be extended to non-profit organizations.  *See Committee for*

5 *Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9ᵗʰ Cir. 1996); *U.S. Jaycees v. San Francisco Jr.*

6 *Chamber of Commerce*, 354 F. Supp. 61 (N.D. Cal. 1972), *judgment aff'd*, 513 F.2d 1226 (9th Cir. 1975)

7 (benevolent, religious, charitable or fraternal organizations are entitled to injunctive relief protecting

8 against the continued use of their name by local chapters which disaffiliate.).  Names of religious

9 institutions and sects are protectable from a likelihood of confusion.  *See e.g., TE-TA-MA Truth*

10 *Foundation—Family of URI, Inc. v. World Church of Creator*, 297 F.3d 662 (7th Cir. 2002), *cert.*

11 *denied*, 537 U.S. 1111, 123 S. Ct. 864 (2003) (defendant's WORLD CHURCH OF THE CREATOR was

12 enjoined as an infringement of plaintiff's CHURCH OF THE CREATOR).  Names of educational

13 institutions are protectable from a likelihood of confusion. *John Roberts Mfg. Co. v. University of Notre*

14 *Dame Du Lac*, 258 F.2d 256, 118 U.S.P.Q. 431 (7th Cir. 1958) (use of college name on rings enjoined).

15 *Compare Enea Embedded Tech, Inc v. Eneas Corp*, 2009 WL 648891 (D.Ariz. 2009) (the complaint was

16 dismissed because it was vaguely worded and the only allegation of use of the trade name was through

17 correspondence that demanded abandonment of the name.")[2]  Thus, the Lanham Act protects more than

18 "purely profit motive," as seen from the numerous cases interpreting the Act.

19     The Ninth Circuit recognizes the concept of protection of competition and denies trademark

20 protection where competition does not exist.  In *Bosley,* the Court denied trademark infringement

21 because the defendant was not in competition with plaintiff.  In *Freecycle*, the Court stated that no

22 competition existed between plaintiff and defendant: "the record in this case does not indicate

23 [defendant's statements] were made to promote any competing service or reap any commercial benefit

24 whatsoever."  *Freecycle,* 505 F.3d at 903.  In both *Bosley* and *Freecycle*, neither defendant competed

25

26     [2] Indeed, *ENEA* is distinguishable.  Defendant registered plaintiff's corporate names, but in the complaint, plaintiff did not allege the defendants were conducting any form of business under plaintiff's corporate names.  The Court noted:

27 "Outside of the registrations, however, Plaintiff fails to allege that Defendants are operating any type of businesses or conducting any advertising under any of the registered names or otherwise using Plaintiffs' ENEA mark in connection with any goods or services."  *Enea Embedded Technology, Inc. v. Eneas Corp.,* 2009 WL 648891, 6 (D.Ariz. 2009).

28

12

1    in any sense with the plaintiff.  In *Bosley*, defendant created a similarly named website to criticize

2    plaintiff's products.  In *Freecycle*, defendant posted critical comments about the name "Freecyle." In

3    neither *Bosley* nor *Freecycle* did the court find the use of the name in a "competitive context," and

4    therefore, did not find trademark infringement.  Pursuant to *Bosley*, and *Freecycle*, defendant's use of

5    plaintiff's name must be used in a commercial or competitive context.  This conclusion that the Lanham

6    Act protects trade names in a "competitive" context, as opposed to a purely profit motive, is consistent

7    with the Lanham Act.

8          Here, plaintiff alleges that defendant and plaintiff offer competing services.  Plaintiff alleges that

9    defendants provide competing bargaining units and provide competing charitable and civic services.

10   (Doc. 23, SAC ¶14.)  Plaintiff alleges its name has good will within the community and is associated

11   in the mind of the public with its services.  (Doc. 23, SAC ¶9, 14.)  Thus, plaintiff has alleged a

12   "competitive context" of the use of its name. It has alleged that defendant has competed with it and

13   reaped a commercial benefit from the use of the name.

14          **5.          Defendant's Request for Judicial Notice**

15          Defendants argue that defendants do not offer competing services.  Defendants argue that

16   "Defendant DSA cannot bargain over labor contracts with the County."  (Doc. 31, Defendants' Reply

17   p.2.) Defendants ask the Court to take judicial notice of memoranda of understanding which purportedly

18   show that defendant DSA cannot engage in collective bargaining or endorse political candidates.  (See

19   Doc. 28, Request for Judicial Notice.)

20          The Court, however, cannot consider matters outside of the pleadings, which are not properly

21   subject to judicial notice.  See Fed.R.Evid. 201 (judicial notice).  Under the Federal Rules of Evidence

22   201, courts may take judicial notice of facts that are not subject to reasonable dispute, either because they

23   are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and

24   ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid

25   201. The Court cannot take judicial notice of the contents of a contract as to the scope of services

26   provided by that contract.  That subject is neither generally known within the territorial jurisdiction nor

27   readily determinable.  The scope of permissible services is a question of fact not properly determined

28   on a motion to dismiss.

1    The standard for this Court's review is whether plaintiff has "enough facts to state a claim to

2    relief that is plausible on its face." "[F]or a complaint to survive a motion to dismiss, the non-conclusory

3    'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim

4    entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.2d 962, 969 (9th Cir. 2009).  At the

5    pleading stage, plaintiff meets its burden by pleading sufficient allegations to show a proper basis for

6    the court to assert subject matter jurisdiction over an action.  *McNutt v. General Motors Acceptance*

7    *Corp.*, 298 U.S. 178, 189.  The factual determinations at this stage of the proceeding do not warrant a

8    dismissal without leave to amend.

9    **D.    Likelihood of Confusion**

10    Defendants argue that plaintiff fails to allege that there is a likelihood of confusion among the

11    plaintiff's "consumers."  Defendant argues that it is accused of using plaintiffs name: by (1) filing

12    articles of incorporation under the SCDSA name; (2) sending a cease and desist letter to Plaintiff's

13    president; and (3) claiming publicly that they have the exclusive right to use the SCDSA name.  (Doc.

14    27, Defendants' P&A p.16.)  Defendant argues these acts are not likely to cause confusion.  Defendant

15    argues that the allegations show that defendants have taking steps to "advise third parties that Defendants

16    have the exclusive right to Plaintiff's trade name" and thus inform the public that the two organizations

17    are not the same.[3]  (Doc. 27, Defendants' P&A p.17 and Doc. 23 SAC ¶29.)

18    The Lanham Act "seeks to prevent consumer confusion that enables a seller to pass off his goods

19    as the goods of another.... Trademark infringement protects only against mistaken purchasing decisions

20    and not against confusion generally."  *Bosley*, 403 F.3d at 677.  "The core element of trademark

21    infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse

22    customers about the source of the products."  *Freecycle Network, Inc. v. Oey,* 505 F.3d at 902.

23    Likelihood of confusion will be found whenever consumers are likely to assume that a mark is associated

24    with another source or sponsor because of similarities between the two marks.  *Academy of Motion*

25    *Picture Arts and Sciences v. Creative House Promotions, Inc.,*  944 F.2d 1446, 1456 (9th Cir. 1991); *see*

---

26

27    [3] Defendant argues that the allegations are directly contradictory that the names caused confusion among consumers. Defendants argue that the allegations in fact show that defendants informed people the two groups were separate groups and took an active role in distinguishing the organizations.  (Doc. 27, Defendants P&A p.17.) The Court, however, cannot make

28    the factual conclusion at this stage of the proceedings that there was <u>not</u> a likelihood of confusion.

*e.g., Committee for Idaho's High Desert Inc. v. Yost*, 92 F.3d 814 (9th Cir. 1996) (Plaintiff owned non-generic mark that had developed secondary meaning, and had not abandoned its rights by failure to make required filings with state. Opponents' adoption of same mark as an opposing environmental advocacy group was unfair competition and deliberate attempt to cause confusion.)

### 1.    Plaintiff's Allegations on Likelihood of Confusion

Plaintiff alleges "confusion" as follows:

> "Defendants' wrongful misappropriation and unauthorized use of Plaintiff's trade name is likely to cause confusion in the marketplace. Plaintiff's use of its trade name in providing the aforementioned services indicates to the public that these services emanate from Plaintiff. Defendants' misappropriation of Plaintiff's name in a competitive context will leave consumers of Plaintiff's services unable to distinguishes between Plaintiff and Defendants' competing services." (Doc. 23, SAC ¶36.)

In determining likelihood of confusion, the Ninth Circuit has adopted the *Sleekcraft* test (*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348, 349 (9th Cir.1979)), balancing the following factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care consumers are likely to exercise in purchasing them; (7) intent of the defendant in selecting the mark; and (8) likelihood that the parties will expand their product lines. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir.2005), *cert. denied*, 547 U.S. 1069 (2006).  In addition, when the alleged infringer knowingly adopts a mark similar to another's, some courts presume that the public will be deceived. *Id.* The likelihood of confusion test is "pliant" and "[s]ome factors are much more important than others." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053-1054 (9th Cir.1999).  No one factor is determinative.  The Ninth Circuit regularly applies "all relevant factors, noting that a final likelihood of confusion determination may rest on those factors that are of the most relative importance in any particular case." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632-33 (9th Cir.2008).

Here, the allegations are sufficient to allege likelihood of confusion pursuant to a number of the *Sleekcraft* factors. Plaintiff has alleged facts related to the creation and longevity of its trade name. (Doc. 23, SAC ¶8 (name used for twenty years).)  Plaintiff alleges that defendants' use of the name and defendants' use in providing competing services.   (Doc. 23, SAC ¶1 (formed a bargaining unit that

competes with plaintiff by providing an exact service provided by plaintiff).) The SAC alleges the similarity of the trade names and defendants' intent on selecting the name.  Thus, several of the factors are addressed in various parts of the complaint.   The complaint adequately alleges likelihood of confusion to defeat the challenges at this pleading stage.

### 2.        Plaintiff's Request for Judicial Notice

Plaintiff requests the Court take judicial notice of two newspaper articles which relate to showing confusion among consumers.  (See Doc. 30.)  The Court, however, cannot consider matters outside of the pleadings, which are not properly subject to judicial notice.  See Fed.R.Evid. 201 (judicial notice).  Under the Federal Rules of Evidence, courts may take judicial notice of facts that are not subject to reasonable dispute, either because they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid 201.  Plaintiff cites *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500 (9th Cir. 1986) for the proposition that the Court may take judicial notice of newspaper articles.  In *MGIC Indem. Corp. v. Weisman*, however, the Court did not take judicial notice of newspaper articles. It took judicial notice of pleadings filed in a prior proceeding involving some of the parties.  The Court may properly take judicial notice of the "judicial act" involved in the pleadings.  Here, the newspaper articles do not involve any judicial act or any conduct, the accuracy of which cannot be reasonable questioned.  Accordingly, the Court does not take judicial notice of these articles.

Plaintiff seeks introduction of the articles to demonstrate there has been actual confusion of the names. In light of the Court's finding that the pleading on likelihood of confusion is sufficient, the Court does not address actual confusion.

### E.      Validity of the Mark

Defendants argue that plaintiff does not have a protectable mark.  Defendants argue that the term "Stanislaus County Deputy Sheriffs Association" is not entitled to trade mark protection.  Defendants argue that "Stanislaus County Deputy Sheriffs Association" is not a valid protectable mark.  Defendants argue that the name is not inherently distinctive, and it has not acquired secondary meaning.  Defendants argue that the name is geographic terms with a descriptor, and  therefore, is merely descriptive

To establish trade mark infringement under the Lanham Act, the plaintiff must show that (1) it

16

1   has a valid, protectable mark, and (2) defendant's use of the mark is likely to cause confusion. *See*
2   *Applied Info. Sciences v. eBay, Inc*., 511 F.3d 966, 969 (9th Cir. 2007). There are three ways in which
3   a plaintiff can establish that it has a protectable interest in a service mark or trademark: "(1) it has a
4   federally registered mark in goods or services; (2) its mark is descriptive but has acquired a secondary
5   meaning in the market; or (3) it has a suggestive mark, which is inherently distinctive and protectable."[4]
6   *Applied Info. Sciences Corp. v. eBay, Inc*., 511 F.3d at 969-970.

7   **1.      Secondary meaning of name**

8   Plaintiff acknowledges that its alleged trade name is descriptive.  A descriptive mark may be
9   subject to protection under the Lanham Act if it has acquired a secondary meaning.  *Two Pesos, Inc. v.*
10   *Taco Cabana, Inc.*, 505 U.S. at 768-69.  "In determining whether a mark has obtained secondary
11   meaning, courts consider: (1) whether actual purchasers of the product bearing the mark associate the
12   mark with the producer; (2) the degree and manner of advertising under the mark; (3) the length and
13   manner of use of the mark; and (4) whether use of the mark has been exclusive." *Miller v. Glenn Miller*
14   *Prods., Inc.*, 454 F.3d 975, 991 (9th Cir.2006). Whether a mark has acquired <u>secondary meaning</u>
15   <u>generally presents a question of fact</u>. *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc*.,
16   419 F.3d 925, 930 (9th Cir. 2005) (emphasis added); *see also Committee for Idaho's High Desert, Inc.*
17   *v. Yost*, 92 F.3d 814, 821 (9th Cir. 1996) (Stating that genericness is a question of fact).

18   Here, plaintiff alleges that the community associates the name with the plaintiff.  Plaintiff alleges
19   that defendant has been using the name.  Plaintiff alleges that it has "continuously referred to itself by
20   [the alleged trade name] in its day-to-day-business for over twenty years" and has used the name
21   "exclusively and on an uninterrupted " basis for twenty years.  (Doc. 23, SAC ¶9.)  Based on these
22   allegations, the Court cannot conclude as a matter of law that the name has failed to acquire a secondary
23   meaning.

24   **2.      Suspension of the Corporate Status**

25   Defendants argues that plaintiff has no rights in the DSA name because plaintiff lost its right in

26

27   [4] Plaintiff does not allege its name satisfies either factor (1) or (3).  Plaintiff does not own a federally registered
   trade mark. Plaintiff does not argue its name is "inherently distinctive."  Therefore, the Court does not address these two
28   factors.

the name when the Franchise Tax Board suspended it for failure to pay taxes.  Under California law, a suspended corporation has no rights to hold unto its name, citing *Boyer v. Jones*, 88 Cal.App.4th 220, 224 (2001).

In *Boyer*, the Court held that a suspended corporation is disqualified from exercising the right, power or privilege to hold a corporate name.

Defendant, however, does not cite any authority as to how the suspension of the corporation status impacts plaintiff's rights under the Lanham Act.  Defendants' motion seeks to dismiss the Lanham Act claim.  The motion does not seek dismissal of state law based claims, other than should this Court find lack of jurisdiction.  Therefore, this ground does not support dismissal of the Lanham Act claim.

**F.      State Law Claims**

Defendants seek to dismiss the state law claims and the declaratory relief claim because the Court lacks federal jurisdiction.  The Court has found that the SAC is factually sufficient under *Iqbal* to state a claim for relief under the Lanham Act.

**G.      Leave to Amend to Add Another Party**

Plaintiff mentions that it may amend to add the entity entitled "Stanislaus Sworn Deputies Association," which was the entity defendants identified as directly competing with plaintiff's services.  Leave to amend is freely given under the Rule 15.  Pursuant to Fed. R. Civ. P. 15, this Court "should freely give leave when just so requires."  Leave to amend is granted.

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

18

**CONCLUSION**

For the foregoing reasons, the motion to dismiss for lack of subject matter jurisdiction and failure to state a claim is DENIED.

Plaintiff is granted leave to amend to add an additional party.

If plaintiff elects to amend, plaintiff shall have 10 days from the date of service of this order to file an amendment.  Defendants shall have 20 days from the date of the amendment, or 20 days from the expiration of the date to amend, to file an appropriate response.


IT IS SO ORDERED.

**Dated:** _____**June 1, 2010**_____                    _____**/s/ Lawrence J. O'Neill**_____
                                                         UNITED STATES DISTRICT JUDGE

19